UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------X

LATANYA COLLINS,

                                Plaintiff,

        -against -

                                                    **AMENDED COMPLAINT**
                                                    Jury Trial Demanded

THE CITY OF NEW YORK, and the                       23 CV 9248 (JAM)
NEW YORK CITY DEPARTMENT
OF EDUCATION,

                                Defendants
------------------------------------------X

As and for her Amended Complaint, Plaintiff Latanya Collins alleges as follows:

## INTRODUCTION AND SUMMARY OF CASE

1.  Plaintiff Latanya Collins (hereinafter "Plaintiff"), appearing *pro se*,[1] brings this action

pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.; 42 U.S.C. §

1983, for the deprivation of her rights under the First Amendment and the Equal Protection

Clause of the Fourteenth Amendment of the United States Constitution; the New York City

Human Rights Law, NYC Administrative Code Title 8; and the New York State Human Rights

Law, NY Executive Law § 296, *et seq.*

2.  On or around August 2004, Plaintiff began employment with the New York City Department

of Education (hereinafter "DOE") as a teacher, and later was employed by the DOE as a Master

REC'D IN PRO SE OFFICE
MAR 29 '24 PM 3:34

---

[1] This Amended Complaint was prepared with help from the City Bar Justice Center's Federal Pro Se Legal
Assistance Project.

1

Teacher for Special Education, Citywide School Administrator and Transition Career and Technical Education (CTE) Leader.

3.   On or around September 21, 2021, Plaintiff applied for a religious exemption to the COVID-19 vaccine mandate to the DOE, via the Self-Service Online Leave Application System ("SOLAS"). Plaintiff's request was denied on September 22, 2021, with no reason provided.

4.   Plaintiff appealed the denial of her application for a religious exemption. Her appeal was thereafter denied. Plaintiff subsequently submitted a request for review to the Citywide Review Panel. Plaintiff has never received a decision from the Citywide Review Panel.

5.   Plaintiff was terminated from employment with the DOE effective February 2022.

6.   After her termination, Plaintiff's fingerprints were flagged with a "Problem Code" by Defendant DOE in their Office of Personnel Investigations. This code is used for hiring blocks.

7.   The Problem Code has significantly impacted Plaintiff's ability to obtain future employment and to secure small business funding. It was issued solely because of Plaintiff's unvaccinated status.

8.   After the vaccination mandate was lifted in 2023, the DOE issued a policy that provided that former pedagogical employees who were terminated by the DOE because of their unvaccinated status could not be reinstated; rather, they could apply for "re-hire," which in fact was "new hire" without back pay, seniority rights, etc.

## THE PARTIES

9.   Plaintiff is an individual who resides in Queens County, in New York State. Plaintiff was employed by Defendant DOE as a tenured teacher from September 2004, until she was terminated, effective February 11, 2022.

10.  Defendant City of New York (City) is a municipal corporation of the State of New York. The City operates and employs people through its municipal agencies, including the DOE. Defendant City established and controlled the Citywide Panel, which was created to review denials of religious exemptions to the COVID-19 vaccine mandate to municipal employees.

11.  Defendant DOE is a school board organized under, and existing pursuant to, the New York Education Law. Defendant DOE maintains its headquarters at 52 Chambers Street, New York, New York, and operates in all five boroughs of the City of New York. Defendant DOE was Plaintiff's employer from 2004 until her termination in February 2022.

## JURISDICTION AND VENUE

12.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

13.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), because they are so related to the federal claims that they form part of the same controversy.

14.  A substantial part of the events or omissions giving rise to the claims in this action occurred in the Eastern District of New York. Accordingly, venue is proper under 28 U.S.C. § 1391(b)(2).

## STATEMENT OF FACTS

15.  On August 23, 2021, a notice of a Vaccine Mandate was issued by Defendant DOE's Chancellor Meisha Porter.

16.  On September 10, 2021, an arbitration award was issued by Arbitrator Martin Scheinman, in the Matter of the Arbitration between the DOE and the UFT, after the parties failed to reach an agreement on the impact of the vaccine mandate on DOE employees. The arbitration award

established a process for DOE employees to submit applications for medical and religious exemptions to the vaccine mandate.

17. On September 21, 2021, Plaintiff applied to the DOE for a religious exemption to its vaccine mandate. In her application, Plaintiff expressed her sincerely held religious objection to the COVID-19 vaccine.

18. On September 22, 2021, Plaintiff received a denial of her application for a religious exemption, without any explanation.

19. Plaintiff appealed from the denial of her application for a religious exemption. Her appeal was listed as Case # A82294 in SOLAS and the confirmation of receipt stated that "This notification confirms the receipt of your appeal of your denial of a COVID-19 vaccine mandated related exemption or accommodation."

20. Plaintiff's appeal was denied on or about October 15, 2021, without explanation.

21. On October 4, 2021, Defendant DOE placed Plaintiff on disciplinary leave without pay because of non-compliance with its vaccine mandate. Plaintiff received notice that she could no longer enter her school building or communicate with any students or families.

22. The October 4, 2021 notification stated "You are receiving this message because you are being placed on Leave Without Pay (LWOP) because you are not in compliance with the DOE's COVID-19 Vaccine Mandate. This means you must not report to your work or school site beginning Monday, October 4th. While you are on Leave Without Pay (LWOP), you: Cannot work and will not receive compensation, Cannot use annual leave, CAR or sick time, Cannot enter your work or school site, Cannot reach out to students or families."

23. Plaintiff, a tenured educator, was removed from her position and placed on a disciplinary leave without pay without the benefit of a hearing, as required by New York State Education Law § 3020-a, and without a pathway to grieve the action taken by Defendant DOE.

24. Plaintiff sought support for filing a grievance and received the following message: "Please note: the grievance process has been suspended for the duration of the pandemic."

25. On January 31, 2022, Plaintiff received an email from Defendant DOE's Division of Human Resources with the subject "February 11 Termination of Employment from NYCDOE." The email stated that Plaintiff would be terminated, effective February 11, 2022, due to "noncompliance with the New York City Health Commissioner's Order requiring vaccination" of all DOE staff. The email stated further, "You must return all DOE-issued equipment and materials, including your ID ... Thank you for your service to the New York City Department of Education."

26. Prior to being placed on forced disciplinary leave without pay, Plaintiff participated in regular COVID testing at her own expense. Plaintiff also submitted to daily health checks, completed medical surveys, temperature checks upon entry, and daily mask-wearing. Plaintiff presented a negative COVID-19 test each day, before reporting to work.

27. Teachers and administrators employed by Defendant DOE challenged the September 10, 2021, arbitration award regarding the DOE's vaccine mandate, issued by Arbitrator Martin Scheinman, in *Kane v. DeBlasio*, 19 F.4th 152 (2d Cir. 2021). On November 15, 2021, a motions panel of the United States Court of Appeals for the Second Circuit referred the matter to a merits panel, and ordered that pending further order of the Court, Plaintiffs shall receive "fresh consideration" of their requests for a religious accommodation.

28.  The motions panel ruled that reviews by the Citywide panel should be in accordance with the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law.  Accommodations were to be considered for all sincerely held religious observances, practices, and beliefs.

29.  On November 28, 2021, the merits panel of the United States Court of Appeals for the Second Circuit considered the challenge to DOE's vaccine mandate by teachers and school administrators.  The Court determined, among other things, that the Citywide Panel "must abide by the First Amendment.  By ordering the Citywide Panel's proceedings to abide by other applicable law, the Motions Panel Order does not (and could not) suggest that the First Amendment is somehow inapplicable to those proceedings." *Kane,* 19 F.4th at 175.  The Court also held that plaintiffs had shown "a likelihood of success on their claim that as applied to them, the City's process for implementing the Vaccine Mandate via the Arbitration Award offended the First Amendment." *Id.*

30.  Plaintiff submitted her request for review on or about October 2021 of the DOE's denial of her application for a religious exemption to the Citywide panel. On October 2, 2021, the request for review was submitted online in SOLAS.

31.  On October 3, 2021, Plaintiff received an acknowledgment of her request for review from SOLAS.  The acknowledgment stated, "Your request will be considered by a central Citywide Panel comprised of representatives of the Commission on Human Rights, the Department of Citywide Administrative Services, and the Office of the Corporation Counsel.  The determination will be made by the panel according to the standards imposed by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law."

32.  To date, Plaintiff has not received any decision from the Citywide Panel regarding her request for review.

33.  On or about April 28, 2022, Plaintiff became aware of an email sent on or about February 9, 2022, from Eric Amato of the DOE (Human Resources) to Beth Norton and Michael Sill of the United Federation of Teachers (UFT) stating that any member who requested an exemption from the vaccination mandate would immediately have their fingerprints placed into the "Problem Code" at DOE's Human Resources Office of Personnel Investigations.  A Problem Code is used when an employee has committed what the DOE considers misconduct.

34.  On or about January 15, 2023, Plaintiff learned that her fingerprints had been flagged by the DOE with a "Problem Code" at its Office of Personnel Investigations.

35.  Until her termination in February 2022, Plaintiff was an employee in good standing. Plaintiff had not committed a crime.

36.  The "Problem Code" in Plaintiff's employment file has significantly impacted Plaintiff's ability to obtain future employment and to secure small business funding.

37.  Plaintiff, a nonprofit business owner, was locked out of the NYC Vendor Portals (i.e., HSS Accelerator, Payee Information Portal, NYC Procurement and Sourcing Solutions Portal) due to the Problem Code. These systems are used for grant and RFP proposals.

38.  Plaintiff also was barred from applying for city contract work because she could not access the Mayor's Office of Contract Services (MOCS) portal.  One must be registered in this portal to receive a contract from the City of New York and to bid on jobs and communicate with vendors. Plaintiff's portal number and login were stated to no longer exist: "not found: vendor #vs0006018 – is not found."  Plaintiff previously had access to these city portals.

39. Upon information and belief, fingerprints of unvaccinated teachers have been shared with the Federal Bureau of Investigations (FBI) and the New York State Division of Criminal Justice Services. See Declaration of Betsy Combier, filed 6/3/22 in *Kane v. De Blasio*, 21-CV-7863 (VEC) (SDNY), attached hereto as Exhibit A.

40. Plaintiff has applied for many positions in New York City and has not been hired for any full-time work, despite making it to second and third rounds of hiring committee interviews, with no reasoning. The only explanation is Defendant DOE's issuance of a Problem Code in Plaintiff's personnel records.

41. After the COVID-19 vaccine mandate was lifted in 2023, the DOE adopted a policy that provided that former pedagogical employees who were terminated because of their unvaccinated status may apply to be "re-hired" as new employees of the DOE, without back pay, seniority rights, etc. See July 2023 DOE policy, attached as Exhibit B.

42. Plaintiff was a tenured educator, with multiple graduate degrees. Nevertheless, pursuant to the DOE's July 2023 policy, Plaintiff would be required to seek, apply for, and interview for teaching positions as they become available. Plaintiff would also be required by the DOE to sign a waiver of rights to "… challenge the involuntary resignation, including, but not limited to through contractual or statutory disciplinary process" before beginning any process of rehiring.

43. On February 21, 2023, Plaintiff timely mailed a Notice of Claim, by certified mail, return receipt to: The Office of the City Comptroller, 1 Centre Street, New York NY; The Office of the Corporation Counsel, 100 Church Street, New York NY; and the New York City Department of Education, 52 Chambers Street, New York.

44. The DOE never acknowledged receipt of the notice of claim that Plaintiff sent to its headquarters by certified mail, return receipt. Plaintiff received written acknowledgment of her Notice of Claim from the Comptroller's Office on March 8, 2023.

45.  Plaintiff filed a Complaint with the United States EEOC on 10/15/2021.  On July 5, 2022, Plaintiff received a Right to Sue Letter, following this complaint for Charge #520202200788, signed by Kristen Clarke – Assistant Attorney General and K. Ferguson Supervisor on 7/1/2022, attached as Exhibit C.

46.  Plaintiff subsequently filed a Charge of Retaliation, Charge #520-2023-02132, with the EEOC.  Plaintiff was interviewed on September 15, 2023, by EEOC Lead Investigator Aracely Francois and was later issued a second Right to Sue Letter, attached as Exhibit D, received on September 18, 2023.

47.  In 2021, before the DOE's vaccine mandate became effective, the EEOC provided guidance to employers – "What You Should Know About COVID, the ADA, the Rehabilitation Act, and Other EEO Laws" – https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws.

48.  Among other things, the EEOC Guidance stated, "Under Title VII, an employer should thoroughly consider all possible reasonable accommodations, including telework and reassignment. In many circumstances, it may be possible to accommodate those seeking reasonable accommodations for their religious beliefs, practices, or observances." Section K.

49.  The EEOC Guidance to employers also stated, "If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted.  An employer should consider all possible alternatives to determine whether exempting an employee from a vaccination requirement would impose an undue hardship." Section L. 5.

50.  The EEOC Guidance to employers was updated in 2023, after the United States Supreme Court issued its decision in *Groff v. DeJoy*, 143 S.Ct. 2279 (2023).  The *Groff* opinion addressed

the meaning of "undue hardship" under Title VII and as explained in the updated EEOC

Guidance, clarified that "more than a *de minis* cost" is necessary for an employer to establish

"undue hardship." The EEOC Guidance now states, "the Supreme Court held that 'undue

hardship is shown when the burden is substantial in the overall context of an employer's

business...".

51. In addition to the EEOC's guidance, the NYC Commission on Human Rights issued

guidance to employers regarding their obligations concerning requests for exemptions from the

vaccine mandate. This guidance is attached as Exhibit E.

**AS AND FOR A FIRST CAUSE OF ACTION**
**Violation of Title VII of the Civil Rights Act of 1964**

52. Defendants failed to accommodate Plaintiff's religious beliefs in violation of Title VII,

which provides "It shall be an unlawful employment practice for an employer ... to discharge any

individual, or otherwise to discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's ... religion ..." 42

U.S.C. § 2000e-2(a)(1).

53. Title VII defines the term "religion" to include "all aspects of religious observance and

practice, as well as belief, unless an employer demonstrates that he is unable to reasonably

accommodate to an employee's ... religious observance or practice without undue hardship on

the conduct of the employer's business." 42 U.S.C. § 2000e(j).

54. Plaintiff held a bona fide religious belief that conflicted with Defendant DOE's requirement

that she be vaccinated. Plaintiff informed her employer of her belief by requesting a religious

exemption to the vaccine mandate.

55. Defendant DOE failed to provide any reasons for its denial of Plaintiff's request for a

religious exemption from the vaccine mandate other than her unvaccinated status.

56. Defendant DOE failed to explain or establish that providing accommodation to Plaintiff would result in undue hardship.

57.  Plaintiff suffered the following adverse employment actions:  Defendant DOE placed her on unpaid leave; Defendant DOE terminated Plaintiff's employment; and Defendant City of New York, through the Citywide Review Panel, failed to issue a decision with respect to Plaintiff's request for review of the denial of her request for a religious exemption to the vaccine mandate.

58.  Defendant DOE retaliated against Plaintiff by assigning a Problem Code to Plaintiff's personnel file; denying Plaintiff the right to return to her former position after the vaccine mandate was lifted; and by requiring all former employees who sought to be "re-hired" to sign a waiver of their rights to challenge their termination.

59.  Accordingly, this Court should find that Defendants violated Title VII by discriminating against Plaintiff because of her religious beliefs with respect to the terms and conditions of her employment.

**AS AND FOR A SECOND CAUSE OF ACTION**
**42 U.S.C. § 1983:  Violation of Plaintiff's Rights**
**Under the First Amendment to the U.S. Constitution**

60.  Defendants DOE and City violated Plaintiff's rights under the Free Exercise Clause of the First Amendment, which provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...."  U.S. Const. amend. 1.

61.  The Free Exercise Clause protects an individual's private right to their religious belief and prohibits an employer from requiring that an employee perform any act that conflicts with the employee's beliefs.

62.  The process established by Defendants to review employees' requests for religious exemptions from the vaccine mandate, and the Citywide Panel's process for reviewing denials of

such requests for religious exemptions, were inconsistent with the First Amendment's Free Exercise Clause.

63. Defendant DOE denied Plaintiff's request for a religious exemption, as well as her appeal of that denial, without any explanation of why accommodation was not possible.

64. Plaintiff's request for review by the Citywide Panel was acknowledged. To date, the Citywide Panel has not provided Plaintiff with a determination.

65. Accordingly, this Court should find that Defendant DOE's procedures for considering applications for religious exemptions to the vaccine mandate, and Defendant City's procedures for reviewing denials of applications for religious exemptions from the vaccine mandate, as applied to Plaintiff, violated her rights under the Free Exercise Clause of the First Amendment.

### AS AND FOR A THIRD CAUSE OF ACTION
### 42 U.S.C. § 1983: Violation of Plaintiff's Rights Under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution

66. Defendants violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the Constitution, which provides that "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. 14, Sect. 1.

67. Defendant DOE failed to apply and enforce its vaccine mandate, including the opportunity for employees to apply for a religious exemption from that mandate.

68. Defendant DOE denied the applications of hundreds of DOE employees who sought religious exemptions to the vaccine mandate. Some DOE employees received explanations for the denials, while others did not. Plaintiff did not receive an explanation of why her application for a religious exemption was denied, and did not receive an explanation of why an accommodation could not be granted.

69. The City, through its Citywide Review Panel, failed to carry out its responsibilities equitably and evenly, discriminating against employees who requested religious exemptions. Some former employees who requested reviews of the denials of their requests for religious exemptions from the vaccine mandate received decisions from the citywide Review Panel, while hundreds of others did not.

70. After Plaintiff submitted a request for review to the Citywide Panel, she received an acknowledgment of that request but, to date, she has not received a determination from the Citywide Review Panel.

71. Accordingly, this Court should find that Defendants violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment, by failing to apply and enforce the vaccine mandate evenly, by failing to carry out Defendants' review processes fairly and equitably, and by refusing to provide a fair and equitable process for reinstatement of Plaintiff to her former position.

## AS AND FOR A FOURTH CAUSE OF ACTION
### Violation of the New York State Human Rights Law

72. Defendants violated the New York State Human Rights Law ("NYSHRL"), which provides "It shall be an unlawful discriminatory practice for any employer ... to impose upon a person as a condition of ... retaining employment ... any terms or conditions that would require such person to violate or forego a sincerely held practice of his or her religion, ... unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's or prospective employee's sincerely held religious observance or practice without undue hardship on the conduct of the employer's business." NY Executive Law § 296(10)(a).

73. Plaintiff informed her employer of her belief by requesting a religious exemption to the vaccine mandate. Plaintiff's request was denied, and she was terminated for failure to comply with the mandate.

74. Defendant DOE failed to explain or establish that providing an accommodation to Plaintiff would result in "undue hardship." In fact, Defendant DOE failed to provide to Plaintiff any reasons for its adverse employment actions, other than the fact that Plaintiff was unvaccinated.

75. Despite the elimination of Defendant DOE's vaccine mandate, reinstatement has been denied to Plaintiff, constituting retaliation against Plaintiff for seeking to establish her rights through multiple channels available to her.

76. Plaintiff suffered the following adverse employment actions: Defendant DOE placed her on unpaid leave; Defendant DOE terminated Plaintiff's employment; and Defendant City of New York, through the Citywide Review Panel, failed to issue a decision with respect to Plaintiff's request for review of the denial of her request for a religious exemption to the vaccine mandate.

77. Defendant DOE retaliated against Plaintiff by: assigning a Problem Code to Plaintiff's personnel file; denying Plaintiff the right to return to her former position after the vaccine mandate was lifted; and by requiring all former employees who sought to be "re-hired" to sign a waiver of their rights to challenge their termination.

78. Accordingly, this Court should find that Defendant DOE violated the NYSHRL by discriminating against her because of her religious beliefs with respect to the terms and conditions of her employment and by retaliating against her.

## AS AND FOR A FIFTH CAUSE OF ACTION
### Violation of the New York City Human Rights Law

79.  Defendants violated Plaintiff's rights under the New York City Human Rights Law ("NYCHRL"), which prohibits discrimination based on the actual or perceived "creed" of any person. NYC Administrative Code § 8-107(1).

80.  With respect to employment, the NYCHRL provides, "It shall be an unlawful discriminatory practice for an employer ... to impose upon a person as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such person to violate, or forego a practice of, such person's creed or religion ... and the employer shall make reasonable accommodation to the religious needs of such person."  NYC Administrative Code § 8-107(3)(a).

81.  A reasonable accommodation under the NYCHRL is an "accommodation to an employee's ... religious observance or practice" that does not cause an "undue hardship" to the employer. NYC Administrative Code § 8-107(3)(b).

82.  Defendants failed to consider Plaintiff's request for a reasonable accommodation. Accordingly, this Court should find that Defendants violated Plaintiff's rights under the NYCHRL.

### RELIEF REQUESTED

By reason of the foregoing, Plaintiff seeks monetary damages for the harm caused to Plaintiff's reputation, livelihood, and career; additionally for the distress, suffering, mental, emotional, and physical anguish and impairment of Plaintiff's ability to secure future employment, and impairment of earning power inflicted upon Plaintiff due to the retaliatory practices, negligence, carelessness, recklessness, and misfeasance, malfeasance, and negligent acts practices, and/or omissions of the Defendants, and for Defendants' violation of Plaintiff's

rights under the United States Constitution, New York State Constitution, New York City

Human Rights Law, and State Human Rights Law, as well as her employment rights under the

Collective Bargaining Agreements between the UFT and the DOE.

Plaintiff also seeks to be made whole and compensated for back pay and benefits, loss of pension

earnings and benefits, emotional distress, damage to reputation, impairment of her ability to

secure future employment, and small business funding, and loss of future earnings, in the amount

of two million dollars, together with such other and further relief as this Court deems just and

proper.

Dated:  Queens, NY
        March 28, 2024

                                          Latanya Collins
                                          Plaintiff *Pro Se*

                                          Address: Box 341143, Jamaica NY 11434

                                          Telephone:  (631) 318.0153

                                          Email: lcollins09@live.com

# EXHIBIT A

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X :
                                                            :
MICHAEL KANE, et al.,                                       :
                                                            :
                               Plaintiffs,                  :
                                                            :    Case No.  21-cv-7863 (VEC) (Lead)
               - against -                                  :
                                                            :
DE BLASIO et al.,                                           :
                                                            :
                               Defendants.                  :
------------------------------------------------------------X :
                                                            :
MATTHEW KEIL, et al.                                        :
                                                            :
                               Plaintiffs,                  :
                                                            :    Case No.  21-cv-8773 (VEC)
               - against -                                  :
                                                            :
THE CITY OF NEW YORK et al.,                                :
                                                            :
                               Defendants.                  :
------------------------------------------------------------X

## DECLARATION OF BETSY COMBIER

Betsy Combier declares as follows, pursuant to 28 U.S.C. § 1746:

1.    My name is Betsy Combier and I am the President and lead paralegal of Advocatz, a paralegal consulting business for people who need a partner as they go through the Courts, grievances, or life problems.

2.    I respectfully submit this Declaration in support of Plaintiffs' Motion for a Preliminary Injunction.

3.    I know the facts stated herein to be true based upon my personal knowledge and based upon my review of the files of hundreds of my clients whom I have represented in proceedings with the New York City Department of Education ("DOE"), except

1

for statements which are made on information and belief and, as to those, I verily believe them.

4.    I have a degree in Child Psychology from Northwestern University, an MA Certificate from the Johns Hopkins' School for Advanced International Studies where my specialization was the Soviet Military Industrial Complex, an MPS in Interactive Telecommunications from New York University, and a Certificate in Art and Drama Therapy from The New School.

5.    I have successfully assisted parents, children, and caregivers with the educational needs of their children, and I have been advocating for the due process rights of Union members—in particular, members of the AFL-CIO, United Federation of Teachers ("UFT") and Local 32 B&J—for 17 years.

6.    From 2007-2010, I worked as Special Representative to the UFT where my job was to oversee the eight re-assignment centers in the NYC DOE, first in all boroughs, and then at the Manhattan, Brooklyn, and Bronx locations.

7.    I am very familiar with the arbitration hearing process, set forth in New York Education Law § 3020-a, having assisted teachers in approximately 300 3020-a hearings since 2003.

8.    I am also very familiar with "problem codes"—the flag the DOE puts in the personnel file of employees to indicate that they should not be hired due to unexplained misconduct of some kind. Employees can be flagged for everything from receiving an unsatisfactory or ineffective rating to engaging in egregious criminal acts. During the three years I worked at the UFT headquarters, I received countless calls every week

2

asking me if there was a problem code on an employee's personnel file. When that happened, I would simply ask the person next door to my office, another UFT Special Representative, whether she could check her computer, and she would tell me "yes" or "no" within a minute.

9.   When the DOE puts a problem code in the employee's personnel file, it also places a flag on the employee's fingerprints, which is then sent to the national databases at both the Federal Bureau of Investigation and the State Division of Criminal Justice Services.

10.   I have represented more than 15 DOE employees before the DOE's Office of Personnel Investigation in proceedings in which they requested the removal of their problem codes. The flag has several names such as "problem code," "pr" code, "pc" code, "ineligible," and "no hire/inquiry" code; however, all refer to a salary block, whatever title it is given.

11.   I have helped approximately 20 DOE employees get their problem codes removed from their personnel files.

12.   I know of many former DOE employees who have problem codes in their personnel files because they declined to be vaccinated in violation of the DOE's mandate and were not granted a religious or medical exemption. The DOE places a problem code on the employee's personnel file immediately upon getting information that the employee did not submit proof of vaccination. As soon as the employee gets the vaccination and submits proof, the code is removed from his or her file.

3

13.    Attached as Exhibit A is a true and correct redacted copy of an email one of my clients received from Eric Amato at the DOE. The email was also sent to UFT Assistant Secretary Michael Sill and copies UFT officials including its General Counsel Beth Norton. The email confirms that DOE employees who were placed on leave without pay for failing to be vaccinated in violation of the DOE's mandate had a problem code (as opposed to any other kind of code) added to their personnel files.

14.    I am aware that non-DOE schools located in counties outside New York City receive funds from the NYC DOE for certain teaching positions. These may include, for example, special education or STEM teachers.

15.    The DOE pays the salaries for these positions using the same system it uses to pay traditional DOE employees, which is called Galaxy. Galaxy indicates whether the employee has a problem code in his or her file and blocks payment to the employee with this flag/code if viewed in the personnel file.

16.    Many of my clients with problem codes in Galaxy have looked for other teaching jobs outside the NYC DOE while their problem code appeals were ongoing.

17.    At least 15 of my clients with problem codes were not hired by prospective schools outside the DOE because such schools saw the problem codes in Galaxy, even though those schools were located outside New York City.

18.    Such schools were able to see the codes because the position applied for was financed by the DOE and so the school used the Galaxy system and could check the prospective employee's file.

4

19.  I also have several clients who applied to schools outside of the DOE who were not hired by their prospective employers because when the prospective employers reached out to the DOE to verify my clients' previous employment, the DOE representative told them about the problem codes in my clients' files.

20.  In sum, any non-DOE school that wants to learn whether a former DOE employee has a problem code in his or her personnel file can readily do so.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  New York, New York
      June 3, 2022

_Betsy Combier_

By: Betsy Combier

5

# EXHIBIT A

Case 1:21-cv-07863-VEC   Document 168-1   Filed 06/03/22   Page 8 of 8

From: **Amato Eric** <EAmato4@schools.nyc.gov>
Date: Wed, Feb 9, 2022 at 8:06 AM
Subject: RE: PR code
To: ██████████████████████ Michael Sill <msill@uft.org>
Cc: Beth A. Norton
<bnorton@uft.org>, Kking@uft.org <Kking@uft.org>, dcampbell@uft.org <dcampbell@uft.org>

PR = Problem code – Problem code was added to all employees who were placed on 2VM vaccine mandate leave. It was placed there the day you went on the leave. Our central offices placed this code on all employees who went on the leave. It will be removed once you are eligible to return to work.

Thanks,
Eric

# EXHIBIT B



SharePoint    Search this site

Central HRD Hub   DHR HRD Hub   Documents   Edit

+ New ∨   Send to ∨   Promote   Page details   A⁺ Immersive Reader   Analytics     Published 7/6/2023   Edit

**VAX Mandate Separations and Rehires**

Former employees are now eligible to apply for budgeted open positions and can be considered for rehire regardless of their vaccination status. ***Please note that there are no provisions for automatic return to service, or guarantees of hire, nor are there any entitlements to back pay.***

Please review the following requirements based on the employee's prior title and separation circumstances:

- **Former Pedagogical Employees:**
    - If the employee was terminated or if the employee signed an attestation/waiver in connection with the special separation incentive, they may apply to be re-hired as a new employee but ***may not be*** reinstated or revoke their resignation for tenure purposes.
    - If the employee retired without signing an attestation /waiver or if the employee signed the attestation/waiver to remain on the Leave Without Pay with benefits, **AND** received a job offer, they **may** apply to withdraw their resignation or retirement per existing rules under the Chancellor's Regulation C-205.

- **Former Permanent Employees in a Competitive Civil Service Title:**
    - If the employee signed an attestation/waiver in connection with the special separation incentive, they **may** apply to be re-hired as a **new** employee, but they ***may not be*** reinstated with permanent status or revoke their resignation for civil service purposes.
    - If the employee was terminated or if they resigned (either without signing an attestation/waiver or if they signed the attestation/waiver to remain on the Leave Without Pay with benefits) **AND** they have a job

        offer, the employee **may** be eligible for reinstatement with permanent status under existing City regulations/procedures.

- **All Other Former Employees:**
    - Are eligible to be considered for employment following the regular process for **new** hires.

Please share this information regarding the application and hiring process by directing all applicants to the DOE Careers page: https://www.schools.nyc.gov/careers

# EXHIBIT C



**VIA EMAIL**

U.S. Department of Justice
Civil Rights Division
**NOTICE OF RIGHT TO SUE WITHIN 90 DAYS**

*150 M Street, N.E.*
*Karen Ferguson, EMP, 4CON, Room 9.514*
*Washington, DC 20530*

July 01, 2022

Ms. Latanya Collins
Box 341143
Queens, NY  11434

Re:  EEOC Charge Against New York City Dept. of Education
 No. 520202200788

Dear Ms. Collins:

    Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

    If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.  If you cannot afford or are unable to retain an attorney to represent you, the Court may, at its discretion, assist you in obtaining an attorney.  If you plan to ask the Court to help you find an attorney, you must make this request of the Court in the form and manner it requires.  Your request to the Court should be made well before the end of the time period mentioned above.  A request for representation does not relieve you of the obligation to file suit within this 90-day period.

    The investigative file pertaining to your case is located in the EEOC New York District Office, New York, NY.

    This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Kristen Clarke
Assistant Attorney General
Civil Rights Division

by        /s/ Karen L. Ferguson
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: New York District Office, EEOC

# EXHIBIT D

 **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

New York District Office
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 09/18/2023

**To:** Ms. Latanya Collins

Charge No: 520-2023-02132

EEOC Representative and email:    ARACELY FRANCOIS
Federal Investigator
aracely.francois@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Timothy Riera
09/18/2023

Timothy Riera
Acting District Director

# EXHIBIT E

 **Commission on Human Rights**

12/19/2021

# Guidance for Employers on Equitable Implementation of COVID-19 Vaccine Requirements

**The New York City Commission on Human Rights is a resource to help employers strengthen their business, become more inclusive employers, and conform their employment practices to the New York City Human Rights Law (NYCHRL).**

As a result of the public health crisis posed by COVID-19 and the effectiveness of available vaccines against COVID-19 infection, many employers in New York City already require their employees to show proof of vaccination against COVID-19. Beginning December 27, 2021, most employees in New York City will be required to provide proof of vaccination against COVID-19 in order to enter their workplaces.

New York City employers with four or more employees are covered by the NYCHRL. This document provides guidance to covered employers on how to ensure equitable implementation of vaccine requirements for their employees, independent contractors, and interns.

## 1.    PROHIBITION ON DISCRIMINATION

When implementing vaccine requirements, employers should take care that their policies and practices do not treat employees differently because of their race, national origin, disability, gender, religion/creed, age, or any other characteristic protected by the NYCHRL.

For example, employers should not:

- Scrutinize proof of vaccination more closely when it is provided by employees of a particular race, national origin, or religion based on the perception that people in those groups are less likely to be vaccinated;
- Require proof of vaccination only for older employees or employees with disabilities based on the belief that COVID-19 is more dangerous for them; or

Refuse to accept certain types of valid proof of vaccination, such as official immunization records from countries outside the United States or photographs of CDC vaccine cards.

## 2.    REASONABLE ACCOMMODATIONS

When applying vaccine requirements, employers must consider requests for reasonable accommodations from employees who need them because of disability, pregnancy, childbirth, lactation, religious beliefs or observances, or status as a victim of domestic violence, stalking, or sex offenses. If an employee requests an exception to a vaccine requirement or additional time to provide their proof of vaccination for one of these reasons, their employer must engage with them in a cooperative dialogue, or a good faith discussion, to see if a reasonable accommodation is possible.

Reasonable accommodations can take many forms. For example, an unvaccinated employee could work remotely, submit to regular testing for COVID-19 infection and wear personal protective equipment, change their work station or work schedule to avoid close contact with coworkers or customers, and/or take a leave of absence. Employers do not have to grant any reasonable accommodation that would cause a direct threat to other employees or customers, or to the requester, or otherwise impose an undue hardship on the employer's business. Examples of accommodations that are likely to pose a direct threat include accommodations that would allow an unvaccinated employee to engage in a high-risk activity, such as yelling or exercising, while in close proximity to others, or to work in close proximity to high-risk individuals.

If there is no reasonable accommodation that would enable an unvaccinated employee to continue performing their job duties without posing a direct threat or an undue hardship, their employer can offer a leave of absence until the employee is able to provide proof of vaccination, or until it is otherwise safe for them to return to work. Employers do not need to pay employees during a leave of absence unless the employer pays other workers who are unable to work for similar reasons.

Bill de Blasio, Mayor
Annabel Palma, Chair and Commissioner

NYC.gov/HumanRights


@NYCCHR