# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

LATANYA COLLINS,

                Plaintiff,

-against -

CITY OF NEW YORK and the NEW YORK CITY DEPARTMENT OF EDUCATION,

                Defendants.

CASE NO. 23-cv-9248 (RER) (PK)

---

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

**GIBSON LAW FIRM, PLLC**
*Attorneys for Plaintiffs*
Sujata S. Gibson, Esq., Of Counsel
120 E. Buffalo St, Suite 2
Ithaca, New York 14850
(607) 327-4125

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ..........................................................................................2

STANDARD OF REVIEW ..........................................................................................7

ARGUMENT ..............................................................................................................7

I.    The City is a proper party to this action...................................................7

II.   Plaintiff adequately plead that both Defendants failed to accommodate her sincerely held religious beliefs ..............................................................11

    A.  Plaintiff states prima facie statutory claims for failure to accommodate...............11

        1.  Plaintiff asserts bone fide religious beliefs  ...................................12

    B.  Defendants are not entitled to the undue hardship defense "as a matter of law"...13

III.  Plaintiff articulated free exercise claims ................................................16

    A.  The Stricken Standards policy was not neutral on its face or as applied...............16

    B.  The Stricken Standards policy was not generally applicable................................18

    C.  Defendants' policies cannot survive strict scrutiny .............................................19

IV.   Plaintiff articulated discrimination claims  ............................................19

    A.  Plaintiff asserts establishment clause claims ......................................................20

    B.  Plaintiff asserted equal protection claims ...........................................................21

    C.  Plaintiff pleaded statutory discrimination claims ...............................................22

    D.  Plaintiff pleaded retaliation claims ....................................................................23

V.    Plaintiff's claims are not limited to Article 78 proceedings and are not time-barred........................................................................................24

VI.   Plaintiff's state law claims are not barred by Notice of Claim requirements  ............25

    A.  Notice requirements do not apply to claims against the City ...............................26

    B.  Notice requirements do not apply to claims against the DOE ..............................26

    C.  Plaintiff met the Notice of Claim requirements in any event ...............................28

        1.  Functional notice suffices  ...........................................................28

        2.  Plaintiff provided timely and proper functional notice....................28

VII.  Plaintiff timely exhausted her administrative remedies........................................30

    A.  Plaintiff timely filed her EEOC charges and this lawsuit.....................................30

    B.  Exhaustion of internal appeals processes argument is meritless ..........................31

VIII. The Second Amended Complaint complies with Rule 8, and Defendants' arguments are procedurally improper, substantively meritless, and irrelevant  ...........................33

CONCLUSION...........................................................................................................34

# **TABLE OF AUTHORITIES**

## Cases

*Abbas v. Dixon,*
    480 F.3d 636, 640 (2d Cir. 2007)...........................................................................13

*Ashcroft v. Iqbal,*
    556 U.S. 662, 678 (2009) ................................................................................7, 11

*Baker v. The Home Depot,*
    445 F.3d 541, 546 (2d Cir. 2006) ......................................................................12

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 570 (2007)....................................................................................7

*Berkowitz v. E. Ramapo Cent. Sch. Dist.,*
    932 F. Supp. 2d 513, 527 (S.D.N.Y. 2013)..............................................15, 28, 29

*Borkowski v. Valley Cent. Sch. Dist.,*
    63 F.3d 131, 143 (2d Cir. 1995)........................................................................14

*Brtalik v. S. Huntington Union Free Sch. Dist.,*
    2010 WL 3958430, (E.D.N.Y. Oct. 6, 2010) ....................................................28

*Caputo v. Copiague Union Free Sch. Dist.,*
    218 F. Supp. 3d 186 (E.D.N.Y. 2016) ..............................................................26

*Carter v. State of New York,*
    95 N.Y.2d 267, 270 (2000) ..............................................................................30

*Chinchilla v. New York City Police Dep't.,*
    No. 23 Civ. 8986 (DEH), 2024 WL 3400526 (S.D.N.Y. July 12, 2024) ...........13

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
    508 U.S. 520, 533 (1993) ................................................................................17

*City of New Orleans v. Dukes,*
    427 U.S. 297, 303 (1976)..................................................................................21

*Colorado River Water Conservation Dist. v. United States,*
    424 U.S. 800, 817 (1976)..................................................................................25

*Connick v. Thompson,*
    563 U.S. 51, 61-62 (2011)................................................................................10

*D'Cunha v. Northwell Health Sys.,*
    No. 23-476-cv, 2023 U.S. App. LEXIS 30612 (2d Cir. Nov. 17, 2023) ............................14

*Deposit Cent. Sch. Dist. v. PERB,*
    214 A.D.2d at 292 (1995) .........................................................................................28

*Does 1-11 v. Bd. of Regents of University of Colorado,*
    100 F.4th 1251 (10th Cir.) .........................................................................................18

*Employment Div., Dept. of Human Resources of Oregon v. Smith,*
    494 U.S. 872, 877 (1990) .........................................................................................18

*Fulton v. City of Philadelphia,*
    593 U.S. 522 (2021) .................................................................................................18

*Jana-Rock Constr., Inc. v. N.Y. State Dep't of Econ. Dev.,*
    438 F.3d 195, 204-05 (2d Cir. 2006) ........................................................................21

*Kadrmas v. Dickinson Pub. Schs.,*
    487 U.S. 450, 457-58 (1988) ...................................................................................21

*Kahn v. New York City Dep't of Educ.,*
    79 A.D.3d 521, 522 (1st Dep't 2010) .......................................................................27

*Kane v. de Blasio,*
    19 F.4th 152, (2d Cir. 2021) ........................................................................... *passim*

*Kushner v. Valenti,*
    285 F. Supp. 2d 314, 316 (E.D.N.Y. 2003) ..............................................................28

*Langsford v. Yale Univ. Sch. of Med.,*
    39 F. App'x 683, 685 (2d Cir. 2002) .........................................................................30

*Larson v. Valente,*
    456 U.S. 228, 244 (1982) .........................................................................................20

*Littlejohn v. City of New York,*
    795 F.3d 297, 311 (2d Cir. 2015) .......................................................................2, 7, 31

*Lynch v. City of New York,*
    952 F.3d 67, 74 (2d Cir. 2020) ...................................................................................7

*Marte v. Montefiore Med. Ctr.,*
    No. 22-cv-03491, 2022 U.S. Dist. LEXIS 186884, (S.D.N.Y. Oct. 12, 2022) ...................12

*Masterpiece Cakeshop v. Colorado C.R. Comm'n,*
584 U.S. 617, 618 (2018) ...................................................................................17

*Med. Pros. for Informed Consent v. Bassett,*
78 Misc. 3d 482, 185 N.Y.S.3d 578 (N.Y. Sup. Ct. 2023)....................................2

*Med. Pros. for Informed Consent v. Bassett,*
228 A.D.3d 1353, 213 N.Y.S.3d 845 (4th Dep't 2024) ........................................2

*Mennella v. Uniondale Union Free S.D.,*
287 A.D.2d at 636-37 (2001) ..............................................................................28

*Mills v. County of Monroe,*
59 N.Y.2d 307, 311 (1987).................................................................................27

*Monell v. Department of Social Services,*
436 U.S. 658, 691–94 (1978)..........................................................................8, 34

*Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville,*
508 U.S. 656, 666 (1993) ....................................................................................22

*New Yorkers for Religious Liberty, Inc. v. City of New York,*
121 F.4th 448, 463–64 (2d Cir. 2024)........................................................ *passim*

*Patrick v. LeFevre,*
745 F.2d 153, 157 (2d Cir. 1984) ........................................................................12

*Patsy v. Bd. of Regents of State of Fla.,*
457 U.S. 496, 516 (1982) ....................................................................................32

*Pembaur v. City of Cincinnati,*
475 U.S. 469, 479–80 (1986) ................................................................................8

*Phillips v. City of New York,*
66 A.D.3d 170, 182 (2009)...................................................................................14

*Riccardo v. N.Y.C. Dep't of Educ.,*
2016 WL 7106048, (S.D.N.Y. Dec. 2, 2016)......................................................28

*Richard v. NYC Dep't of Educ.,*
2022 WL 4280561, (E.D.N.Y. Sept. 15, 2022) ...................................................28

*Sotomayor v. City of New York,*
862 F. Supp. 2d 226, 248 (E.D.N.Y. 2012) ..........................................................7

*Spivack v. City of Philadelphia,*
    109 F.4th 158 (3d Cir.) ...................................................................................18

*Spoleta Const. v. Bd. of Educ.,*
    221 A.D.2d at 928 (1995) ...............................................................................28

*Thorne-Long v. City of New York,*
    No. 14-CV-0835 (E.D.N.Y. 2014) ..................................................................10

*Town of Oyster Bay v. Kirkland,*
    19 N.Y.3d 1035, 1038 (2012) .........................................................................32

*Trump v. Hawaii,*
    138 S. Ct. 2392, 2423 (2018) .........................................................................22

*TWA v. Thurston,*
    469 U.S. 111, 121 (1985) ...............................................................................22

*Union Free Sch. Dist. No. 6 v. N.Y. State Human Rights Appeal Bd.,*
    35 N.Y.2d 371 (1974) ................................................................................26, 28

*Vega v. Hempstead Union Free Sch. Dist.,*
    801 F.3d 72, 86-87 (2d Cir. 2015) ....................................................................7

*Whitfield v. City of New York,*
    96 F.4th 504, 528-29 (2d Cir. 2024) ..............................................................25

**Statutes**

Civil Rights Act of 1964 § 7, 42 U.S.C. § 2000 et seq .......................................*passim*

Fed. R. Civ. P. ...................................................................................................... 34

NYCHRL ........................................................................................................*passim*

NYSHRL .........................................................................................................*passim*

New York Education Law § 2590-h ....................................................................... 8

New York Education Law § 3813(1).......................................................... 27, 28, 29

New York Executive Law § 296(10)(a)................................................................. 11

N.Y.C. Admin. Code § 8-102. ............................................................................. 22

N.Y.C. Admin. Code § 8-107(3)(a). ..................................................................... 14

N.Y.C. Admin. Code § 8-107(28)(2). ................................................................... 21

20 C.F.R. §1605.2(b) ................................................................................................ 11

U.S. Constitution Amend, I. ................................................................................ *passim*

U.S. Constitution Amend. XIV, § 1 ..................................................................... *passim*

28 U.S.C. §§ 1331 and 1343 .................................................................................... 25

# PRELIMINARY STATEMENT

Plaintiff, Latanya Collins ("Ms. Collins") respectfully submit this memorandum of law in opposition to Defendants' motion to dismiss the Second Amended Complaint ("SAC"). This case arises from Defendants' systemic religious discrimination in enforcing a COVID-19 vaccine mandate that unlawfully favored certain religious beliefs while targeting others to limit accommodations, violating Plaintiffs' rights under the First Amendment, Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("SHRL"), and the New York City Human Rights Law ("CHRL").[1]

Ms. Collins worked for DOE for twelve years before she was unlawfully denied religious accommodation and ultimately terminated. She has sincerely held religious beliefs that do not allow her to get vaccinated. SAC 471-477. Her job was almost entirely administrative in nature and she could have been accommodated so that she did not have to work in person in any classrooms. SAC 491-511.

The Second Circuit has twice confirmed the unconstitutionality of Defendants' original religious accommodation policies (the only ones Plaintiff was ever given). In *Kane v. De Blasio*, 19 F.4th 152, 168–69 (2d Cir. 2021), the court held that these policies were likely unconstitutional and ordered remedial review by a Citywide Panel with reinstatement and back pay for qualifying employees. In *New Yorkers for Religious Liberty, Inc. v. City of New York*, 121 F.4th 448, 463–64 (2d Cir. 2024), the court reversed the dismissal of a DOE employee's claims because she, like Plaintiff here, was denied Citywide Panel review and subjected only to the unconstitutional

---

[1] With Defendants' consent, Plaintiffs withdraw their substantive due process claim (FAC ¶¶ 1405–1412) and will file a stipulation to formalize this withdrawal. This memorandum addresses only the remaining claims under the First Amendment, Equal Protection CLause, Title VII, SHRL, and CHRL.

original policies. Plaintiff's facts are nearly identical to the plaintiff whose claims were reinstated by the Second Circuit in *New Yorkers for Religious Liberty.* These precedents preclude dismissal of Plaintiff's constitutional claims and support her statutory claims, which require only a minimal inference of discriminatory intent. *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

Defendants' motion offers on sparse merits arguments, misrepresenting the law on religious beliefs and undue hardship, and instead leans on baseless procedural objections and an irrelevant defense of the vaccine mandate's legality—a claim Plaintiff does not raise. As detailed below, Defendants' motion fails, and the Court should deny it in its entirety.

## STATEMENT OF FACTS

A comprehensive statement of the relevant facts is contained within the Second Amended Complaint, incorporated herein by reference. Certain key facts are set forth here.

**The Mandate and Discriminatory Religious Accommodation Policy**

On August 24, 2021, Defendants City of New York and the New York City Department of Education (DOE) imposed a COVID-19 vaccine mandate requiring all DOE employees, including Plaintiff Latanya Collins, a tenured administrator and master teacher, to show proof of vaccination by September 27, 2021. The stated rationale referenced the spread of the Delta variant and a healthcare worker mandate, which was later struck down as arbitrary and capricious after the New York State Department of Health admitted that COVID-19 vaccines could not stop transmission. (FAC ¶¶ 25, 46; *Med. Pros. for Informed Consent v. Bassett*, 78 Misc. 3d 482, 185 N.Y.S.3d 578 (N.Y. Sup. Ct. 2023), appeal dismissed, 228 A.D.3d 1353, 213 N.Y.S.3d 845 (4th Dep't 2024)). Moreover, many employees had been allowed to work with students in person throughout the 2020-2021 school year without issue. SAC ¶ 15.

Initially, Defendants declared they would not consider religious or medical

2

accommodation requests. However, a court order and labor disputes forced an amendment to the mandate to permit such accommodations, either in-person or remotely. SAC ¶¶ 33, 70–71. In a parallel labor proceeding involving unions, Arbitrator Martin A. Scheinman issued an award requiring Defendants to provide religious accommodations through an "Expedited Review Process" (the "Stricken Standards"). SAC ¶¶ 74–75; Ex. 1 at 6–7. These standards, later struck down as unconstitutional by the Second Circuit (*Kane v. de Blasio*, 19 F.4th 152, 167–71 (2d Cir. 2021)), set forth discriminatory criteria for determining eligibility, including: (1) favoring Christian Scientists while excluding most other faiths; (2) rejecting personally held or philosophical beliefs; (3) denying requests if a religious leader publicly supported vaccines; and (4) requiring membership in an "established" religious organization with clergy-verified, longstanding opposition to vaccines. SAC ¶¶ 84–101.

The Stricken Standards, largely drafted by the City's Law Department under attorney Eric Eichenholtz, were adopted and implemented by Defendants. SAC ¶¶ 85, 259–61. The policy mandated that the DOE make initial determinations, with appeals to arbitrators bound by the same criteria. Notably, the Stricken Standards prohibited denials on undue hardship, stating qualifying applicants "shall be permitted the opportunity to remain on payroll." SAC ¶¶ 80, 104–05.

Despite this, the DOE denied 100% of religious accommodation applications, including Plaintiff's, via autogenerated emails. These denials falsely claimed that applicants "failed to meet the criteria for a religious based accommodation" and that any accommodation would pose an "undue hardship (i.e., more than a minimal burden)" on DOE operations, using an incorrect legal standard. SAC ¶¶ 107–10, 125–27. The emails misrepresented the mandate, which had been amended to allow in-person accommodations, and lacked any individualized analysis, despite Plaintiff's ability to work remotely or with other accommodations, as she had done previously,

3

even before the pandemic. SAC ¶¶ 117–19, 136–38. No cooperative dialogue was offered, and no DOE representative reviewed Plaintiff's application before issuing the denial. SAC ¶¶ 111–13.

**Procedural Barriers to Accommodation**

The DOE imposed significant procedural obstacles that hindered Plaintiff's ability to seek religious accommodation. Employees were given only 24 hours to appeal denials through the SOLAS online system, which frequently crashed, preventing timely submissions. SAC ¶¶ 199–202. Deadlines were poorly communicated, and the 24-hour appeal window often conflicted with religious observances, such as the Sabbath, further limiting Plaintiff's ability to appeal. SAC ¶¶ 187, 201. System failures and arbitrary restrictions, such as barring late submissions, prevented many from accessing the appeal process. SAC ¶¶ 198, 204–05. The UFT and other unions acknowledged these systemic issues, but Defendants failed to remedy them. SAC ¶ 197.

**Direct Discrimination Against Plaintiff's Faith**

Even when appeals were possible, the DOE and arbitrators applied the Stricken Standards discriminatorily. Plaintiff, whose sincerely held religious beliefs prohibited her from taking the COVID-19 vaccine due to her sincerely held religious beliefs against abortion (among other reasons), faced categorical denials based on her faith. SAC ¶ 819-820. During appeal hearings, DOE representatives argued that entire religious groups, including Jews, Muslims, Catholics, Buddhists, and non-denominational Christians (except Christian Scientists), were ineligible because their religious "leaders" (e.g., the Pope, the Dalai Lama) had publicly supported vaccination, regardless of individual beliefs. SAC ¶¶ 215–34. For example, DOE cited a Jerusalem Post article to deny all Jewish applicants and argued that Catholics, like Plaintiff potentially, were ineligible because "the Pope supports vaccination," ignoring letters from personal clergy or diverse theological views within faiths. SAC ¶¶ 215–23.

4

Defendants further dismissed beliefs grounded in personal prayer or concerns about aborted fetal cell lines in vaccine production as "not religious in nature," despite legal protections under Title VII, the New York State Human Rights Law (SHRL), and the New York City Human Rights Law (CHRL). SAC ¶¶ 239–44. Mayor de Blasio reinforced this discrimination, publicly stating that accommodations would be limited to "a very, very specific longstanding objection" from faiths like Christian Scientists, explicitly favoring certain religions and dismissing personal beliefs. SAC ¶ 266. These policies resulted in at least 163 employees, including teachers, being accommodated because their beliefs aligned with the Stricken Standards, while Plaintiff was denied despite no undue hardship, as accommodation was feasible. SAC ¶¶ 120, 246–49. Defendants mischaracterize Plaintiff's role at DOE, characterizing her as a "teacher." As set forth more fully in the FAC, this is misleading. Plaintiffs "job was primarily administrative and could have easily been accommodated as entirely remote without any real hardship or change." SAC ¶¶ 491-506. It did not require her to enter any classroom. *Id.*

**Second Circuit's Ruling in Kane and Defendants' Failure to Remediate**

In November 2021, the Second Circuit held in *Kane v. de Blasio* that the DOE's religious accommodation policies were likely unconstitutional, lacking neutrality and general applicability, particularly for denying applicants based on religious leaders' stances or rejecting personally held beliefs. SAC ¶¶ 774–77; Kane, 19 F.4th at 167–71. The City conceded the Stricken Standards were "constitutionally suspect" and was ordered to provide a remedial process via a Citywide Panel to give "fresh consideration" to denied requests. SAC ¶¶ 774, 664.

However, Defendants failed to provide Plaintiff with any remedial review. The City limited reviews to employees who "exhausted" appeals under the unlawful Stricken Standards, despite their discriminatory nature and system failures that prevented appeals. SAC ¶¶ 186, 202–05.

5

Plaintiff had exhausted her appeals under the Stricken Standards and received a cursory denial from the arbitrator with no further explanation than an "x" next to the word denied. SAC 483-486. After *Kane*, Plaintiff attempted to apply through SOLAS for a Citywide Panel review, but was repeatedly sent an error message and blocked from applying. SAC ¶¶ 518-519. She mailed a letter to DOE notifying them of her claims post-Kane and requesting a remedial review. SAC ¶¶ 520-521.

Shortly after, Plaintiff received an email confirming that the Citywide Panel would review her application and reinstate her with back pay if she was deemed qualified under lawful standards. SAC ¶ 522. The Citywide Panel never engaged in any cooperative dialogue or took any further action on Plaintiff's appeal. SAC ¶ 523. Instead, the Citywide Panel failed to issue any decision at all, leaving Plaintiff's application to pend for months, while Plaintiff became increasingly more hungry and desperate without any salary or means to support herself. SAC ¶ 524. In February 2022, she was terminated without ever receiving a decision from the Citywide Panel. SAC ¶ 525.

Plaintiff's story is not unusual. Of an estimated 5,000–7,000 applicants denied under the original Stricken Standards, the City admits only approximately 500 received review, with just one denial reversed. SAC ¶ 664.

**Post-Mandate Consequences**

After the mandate was repealed in February 2023, Defendants refused to reinstate Plaintiff, attached "problem codes" to her DOE file (typically reserved for serious misconduct like child abuse), and blocked her unemployment benefits by falsely claiming she committed "misconduct" for adhering to her religious beliefs. SAC ¶¶ 701–03. In unemployment hearings, Defendants continued discriminatory arguments, echoing the Stricken Standards by invalidating Plaintiff's beliefs based on religious leaders' public stances. SAC ¶¶ 218–22. These actions have prevented

6

Plaintiff from being rehired, causing ongoing harm to her career and reputation. SAC ¶¶ 641, 767.

## STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6), the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Lynch v. City of New York*, 952 F.3d 67, 74 (2d Cir. 2020); *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). To survive a motion to dismiss, a complaint need only "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard "does not require 'detailed factual allegations,'" but demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The assessment 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct. *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955; *see Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937." *Lynch*, 952 F.3d at 75. A complaint should not be dismissed simply because it appears recovery is remote or unlikely. *Twombly*, 550 U.S. at 556. Where, as here, a plaintiff brings claims of employment discrimination, the facts "alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311; see also *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015).

## ARGUMENT

### POINT I
### THE CITY IS A PROPER PARTY TO THIS ACTION

The City is a proper party because the SAC alleges extensive facts demonstrating the City actively participated in, directed, and controlled the discriminatory religious accommodation policies that violated Plaintiff's rights. Defendants' reliance on *Sotomayor v. City of New York*, 862

7

F. Supp. 2d 226, 248 (E.D.N.Y. 2012), is misplaced as that case addresses liability for employee torts based on respondeat superior, not municipal policy liability. Here, the City's liability rests on its own policies and customs as a joint principal with the DOE, satisfying the requirements for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658, 691-94 (1978).

Under *Monell*, a municipality can be held liable when its official "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," directly contributes to a constitutional violation. *Id.* at 694. "*Monell* established that alleging that a municipal policy or ordinance is itself unconstitutional is always sufficient to establish the necessary causal connection between the municipality and the constitutional deprivation, because an employee's act of enforcing an unconstitutional municipal policy may be considered the act of the municipality itself." *Id.* at 694; see also *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986). A municipal policy need not be written or formally adopted to create liability; it may be inferred from widespread practice (*Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004)) or from a single decision by a municipal policymaker with final authority in that area. *Pembaur*, 475 U.S. at 480. Here, Plaintiff alleges (and the Second Circuit has confirmed) that the Stricken Standards policy that Defendants applied to deny Plaintiff religious accommodation was unconstitutional on its face and in its application. *Kane*, 19 F.4th at 168-69.

The SAC pleads specific facts showing the City adopted an official and de facto policy of religious discrimination, implemented through the Mayor, Health Commissioner and their attorneys in coordination with the DOE, including but not limited to the following City-specific allegations:

- The City exercises mayoral control over the DOE, with the Mayor holding final policymaking authority under New York Education Law § 2590-h. [SAC ¶¶ 6-7, 254-257].

- The Mayor's office initially directed the DOE to offer no religious accommodations to the vaccine mandate, regardless of undue hardship, in violation of state and federal accommodation statutes. [SAC ¶ 258].

- When it became apparent the City would have to provide reasonable accommodation, the City drafted and proposed the discriminatory "Stricken Standards" limiting accommodations to a few preferred religions. [SAC ¶¶ 259-261].

- The Arbitration Award required both Defendants to accommodate the religious beliefs of DOE employees from the mandate either using the Stricken Standards or another statutory review process [SAC ¶¶ 74-76, 80]. This explicitly binds the City to provide accommodations and makes them liable for adopting and enforcing the Stricken Standards.

- Mayor de Blasio publicly endorsed this discriminatory policy, stating that only "two well-established religions, Christian Science and Jehovah's Witnesses" would be accommodated and "we are saying very clearly, it's not something someone can make up individually. It has to be, you're a standing member of a faith that has a very, very specific long-standing objection." [SAC ¶ 266-267].

- The Mayor's office and City attorneys supplied the DOE with materials to support their directive to categorically deny accommodations to most religions, including a Jerusalem Post letter to reject Jewish applicants and directives to exclude Buddhists, Muslims, Catholics and most Christians based on articles about religious "leaders" belonging to these religions. [SAC ¶¶ 273-277].

- City Health Commissioner Dave Chokshi, who issued the Mandate, then prepared and sent a letter to the arbitrators and DOE, instructing them to also deny accommodations based on objections to aborted fetal cell lines, regardless of the person's religion. [SAC ¶¶ 240-

244, 278].

- When it was clear that the unconstitutional scheme would be struck down by the Second Circuit, the City created and controlled the Citywide Panel, designed and supervised by their defense attorney Eric Eichenholtz, to "remediate" the harm. But then it failed to provide the "fresh review" promised to the Second Circuit. [SAC ¶¶ 298-302, 307-309].

These facts collectively and individually create City liability. The City had a duty to ensure the religious accommodation decisions were lawful. At minimum, the City's deliberate indifference to the use of unconstitutional standards imposes liability. "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. The city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution." *Connick v. Thompson*, 563 U.S. 51, 61-62 (2011) (cleaned up).

The SAC plausibly alleges the City was on notice, and more, as the City drafted and proposed an unconstitutional policy, directed DOE to use it, endorsed the discriminatory criteria in press conferences, ignored the *Kane* complaint detailing the constitutional violations, admitted to the Second Circuit the policies were likely unconstitutional, which the Court confirmed, volunteered to remediate the harm and yet failed to do so for Plaintiff. Rather than remediate the harm at any of these stages, the City never even bothered to repudiate the Stricken Standards, instead openly advocating for them at every level.

*Thorne-Long v. City of New York*, No. 14-CV-0835 (E.D.N.Y. 2014) (unpublished), cited by Defendants, is inapposite, as that plaintiff offered merely conclusory claims, unlike here where

10

the SAC's detailed allegations clearly meet Iqbal's plausibility standard. 556 U.S. 662, 678 (2009). Moreover, the Second Circuit has already held that DOE employees were likely to succeed on their claims against both the City and the DOE for these constitutional violations. *Kane*, 19 F.4th at 166; SAC ¶ 304. Given the robust factual allegations demonstrating the City's direct involvement, which far exceeds the allegations in *Kane*, this Court must follow the Second Circuit's precedent.

**POINT II**
**PLAINTIFF ADEQUATELY PLEAD THAT BOTH DEFENDANTS FAILED TO ACCOMMODATE HER SINCERELY HELD RELIGIOUS BELIEFS**

**A. Plaintiff States Prima Facie Statutory Claims for Failure to Accommodate**

As set forth above, the Stricken Standards required both the City and DOE to provide religious accommodation to DOE employees and the Second Circuit's rebuke ordered both parties to remediate their original harm and reinstate employees who qualify under statutory standards. Defendants failed in that duty.

As set forth above, the Stricken Standards required both the City and DOE to provide religious accommodation to DOE employees and the Second Circuit's rebuke ordered both parties to remediate their original harm and reinstate employees who qualify under statutory standards. Defendants failed in that duty.

Title VII, SHRL and CHRL each impose an affirmative obligation to make reasonable accommodations for employees' (or potential employees') religious beliefs and practices. 42 U.S.C §2000e(j); 20 C.F.R. §1605.2(b); N.Y. Executive Law § 296(10(a). Under the CHRL, the burden is even higher, as it is not just a violation to deny accommodation, but is also an act of discrimination to "impose upon a person as a condition of obtaining or retaining employment terms or conditions, compliance with which would require such person to violate, or forego, a practice of, such person's creed or religion,...and the employer shall make reasonable accommodation to the religious needs of such person." N.Y.C. Admin Code § 8-107(3)(a).

11

To make out a prima facie case of religious discrimination under Title VII, employees had to show "(1) [they] held a bona fide religious belief conflicting with an employment requirement; (2) [they] informed [their] employers of this belief; and (3) [they were] disciplined for failure to comply with the conflicting employment requirement." *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006). The state and local statutory elements are substantially similar. *See Marte v. Montefiore Med. Ctr.*, No. 22-cv-03491, 2022 U.S. Dist. LEXIS 186884, at *19 (S.D.N.Y. Oct. 12, 2022). Defendants concede elements 2 and 3 but assert that Plaintiff did not assert a sincerely held religious belief. [MOL at 37].

**1. Plaintiff Asserts Bona Fide Religious Beliefs**

Contrary to Defendants' conclusory assertion, Plaintiff met her light burden of asserting sincerely held religious beliefs. The EEOC instructs that employers should ordinarily assume that an employee's request for religious accommodation is based on a sincerely held religious belief. EEOC Compliance Manual on Religious Discrimination § 12-I(A)(3) (2021). Courts repeatedly affirm this standard and hold that the government is "singularly ill-equipped to sit in judgment on the verity of an adherent's religious beliefs," with their competence extending "only to determining whether the beliefs professed are sincerely held and religious in nature." *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984) (citing cases).

The Court is respectfully referred to the SAC, which clearly meets the pleading standard to show that Plaintiff has asserted a bona fide religious belief. As detailed in the SAC, Ms. Collins is a devout Christian from a devoutly religious family. She is a long-time member of the historic Greater Allen A.M.E. Cathedral of New York, and her daughter has attended religious schools since preschool. [SAC ¶ 472]. One of her core religious beliefs is that participation in abortion is a sin. [SAC ¶ 473]. When she learned that aborted fetal cell lines were used in the production and

12

development of all three COVID-19 vaccines, Ms. Collins approached her pastor to discuss her religious concerns. [SAC ¶ 474]. He told her to pray on it, asking her to use her strength in the Lord. [SAC ¶ 475]. Plaintiff and her family prayed repeatedly, and based on these prayers, decided together that they could not participate in vaccination without violating their religious beliefs. [SAC ¶ 476]. Ms. Collins routinely prays, not just over medical decisions, but about all aspects of her life, and she was very clear that taking these products was not in alignment with God's will as she understands it through prayer and reflection. [SAC ¶ 477].

Defendants' attempt to dismiss Ms. Collins' sincere religious beliefs is both factually baseless and legally indefensible. As detailed in Point III, the Second Circuit has twice rebuked the City for discriminating against personally held religious beliefs. *Kane*, 19 F.4th at 168-69; *New Yorkers for Religious Liberty, Inc*., 121 F.4th at 463-64.

### B. Defendants Are Not Entitled to the Undue Hardship Defense "as a Matter of Law"

"If employees establish a prima facie case of religious discrimination under Title VII, the burden then shifts to the employer to show it could not accommodate the employees' religious beliefs without undue hardship." *Knight*, 275 F.3d. Contrary to Defendants' assertion, the facts in this case do not justify dismissal based on undue hardship "as a matter of law." Undue hardship is an affirmative defense. In *Chinchilla,* which Defendants heavily rely on, the court rejected Defendants' similar arguments on undue hardship, stating: "The pleading requirements in the Federal Rules of Civil Procedure...do not compel a litigant to anticipate potential affirmative defenses...and to affirmatively plead facts in avoidance of such defenses." *Chinchilla v. New York City Police Dep't,* No. 23 CIV. 8986 (DEH), 2024 WL 3400526, at *10 (S.D.N.Y. July 12, 2024) (citing *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007).

Defendants acknowledge that undue hardship, an affirmative defense, is not typically available

on a motion to dismiss, as Defendants bear the burden of proof. See *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 143 (2d Cir. 1995). However, they claim that this is one of the rare cases where they can prevail on undue hardship "as a matter of law" because it is "clear that the defense appears on the face of the complaint." [MOL at 39, citing *D'Cunha v. Northwell Health Sys.*, No. 23-476-cv, 2023 U.S. App. LEXIS 30612 (2d Cir. Nov. 17, 2023)]. This argument fundamentally misapplies the law.

First, *D'Cunha* is inapposite as it involved a healthcare setting where the vaccine mandate at issue did not allow for any religious accommodation. By stark contrast, the Mandate here was amended to expressly allow for religious accommodation on its face, SAC ¶¶ 71-73. And DOE provided religious accommodation to "at least 163 persons in this manner, some of them teachers," SAC ¶ 120. They even allowed "one or more unvaccinated teachers... to go back in person to teach their class while the Mandate was in effect." SAC ¶ 121. These accommodated workers kept their accommodations after the Second Circuit struck down the policy that favored them and were still being accommodated while Defendants continued to refuse to provide the same relief to those like Plaintiff who had been prejudiced under the unlawful policy. On such facts, undue hardship "as a matter of law" is impossible.

Second, absent a per se bar on a particular accommodation, courts cannot presume that accommodation would present a particular hardship as a matter of law. It is per se unlawful to find undue hardship as a matter of law under the CHRL. Under that liberal standard, "there is no accommodation (whether it be indefinite leave time or any other need []) that is categorically excluded from the universe of reasonable accommodation." *Phillips v. City of New York*, 66 A.D.3d 170, 182 (2009) (courts must "deem all accommodations reasonable except for those a defendant proves constitute an undue hardship.") State and Federal standards also preclude

14

assumptions about hardship absent proof and objective evidence.

Here, like in *Berkowitz,* Defendants not only fail to present objective evidence, but admit they never assessed any to justify denying Plaintiff. Mr. Eichenholtz, who supervised the Citywide Panel and drafted and oversaw the implementation of the Stricken Standards, admitted under oath that "neither the City nor the DOE analyzed any of the statutory factors before denying applicants" (SAC ¶ 326) and "neither the City nor the DOE ever assessed any objective evidence to determine that employees could not safely be accommodated before issuing the undue hardship denials" (SAC ¶ 327). He further admitted that DOE never provided or reviewed information "as to the number of employees it could afford to employ without causing undue hardship" (SAC ¶ 330), and that the "inability to pay employees" who were not able to work in person "has not come up" (SAC ¶ 331). Regarding safety concerns, Mr. Eichenholtz admitted he "was not aware of any direct threat analysis conducted for any employee" (SAC ¶ 333) and "could not recall any panel member assessing whether Covid-19 vaccination could limit the spread of Covid-19" (SAC ¶ 334). These admissions preclude undue hardship to be found as a matter of law.

Third, Defendants' failure to engage in cooperative dialogue prior to denial legally precludes dismissal as a matter of law. The SAC explicitly alleges that "No one at the DOE individually reviewed [Plaintiff's] application before denying her" (SAC ¶¶ 481) and that "Defendants never engaged in any cooperative dialogue or took any further action on Plaintiff's appeal" (SAC ¶ 523). These allegations are a separate basis to preclude Defendants from claiming undue hardship "as a matter of law" at the motion to dismiss stage.

Additionally, Ms. Collins' job was primarily administrative and could have easily been accommodated as entirely remote without any real hardship or change. [SAC ¶¶ 491-506]. She began her career at DOE in 2004, was tenured in 2007, and by 2021, very little of her job involved

teaching students. [SAC ¶¶ 492-494]. As a Master Teacher, her primary job was to assess data for struggling schools, make recommendations on professional development, and coordinate with building administrators. [SAC ¶ 495]. She did not need to enter any school buildings to do this work, which typically took up about 85% of her time. [SAC ¶¶ 496-497]. The remainder of her work involved co-teaching, which she had previously done remotely even before the pandemic. [SAC ¶¶ 503-505]. These facts make it impossible to find undue hardship as a matter of law.

## POINT III
## PLAINTIFF ARTICULATED FREE EXERCISE CLAIMS

The Second Circuit's decision in *Kane* and *New Yorkers for Religious Liberty, Inc.* establish that Plaintiff's free exercise claims should not be dismissed. In *Kane*, the Second Circuit held that similarly situated DOE plaintiffs were likely to succeed on their free exercise claims, holding "[w]e confirm the City's 'susp[icion]' that the [Stricken Standards] procedures likely violated the First Amendment as applied to these Plaintiffs." *Kane*, 19 F.4th at 167. In *New Yorkers for Religious Liberty*, the Second Circuit confirmed that this holding applies to employees who did not receive a Citywide Panel review. *New Yorkers for Religious Liberty, Inc. v. City of New York*, 121 F.4th at 464 (reversing dismissal of Solon's claims because "she never even had an opportunity to appeal the denial of her religious exemption or to have her exemption considered by the Citywide Panel" and noting that "without the opportunity to submit to the Citywide Panel for fresh review, Solon's religious exemption request can only have been considered under the same framework that we held was likely unconstitutional in *Kane*"). There is no material difference between Ms. Collins' facts and Ms. Solon's facts and Defendants identify no reason they should receive a different outcome.

### A. The Stricken Standards Policy Was Not Neutral on its Face or As Applied

Plaintiff's free exercise claims must be assessed under strict scrutiny because the policies

16

offered to Plaintiff were discriminatory on their face. "The minimum requirement of neutrality is that a law not discriminate on its face." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993). Facial neutrality, of course, will not result in a finding of neutrality, as even "subtle departures" from religious neutrality as well as "the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question and the legislative or administrative history, including contemporaneous statements made by members of the decision-making body" can defeat neutrality and trigger strict scrutiny. *Id.* at 534, 430. Here, those factors also defeat neutrality.

In *Kane,* the Second Circuit held that "the procedures specified in the Arbitration Award and applied to Plaintiffs are not neutral" because they are hostile and "presuppose[s] the illegitimacy of religious beliefs and practices." *Kane*, 19 F.4th at 168 (citing *Masterpiece Cakeshop,* 138 S. Ct. at 1731). The Court found that the Stricken Standards violated this standard on its face by requiring that "[e]xemption requests shall be considered for recognized and established religious organizations" and that "requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature."

The Second Circuit concluded that "Denying an individual a religious accommodation based on someone else's publicly expressed religious views --- even the leader of her faith ---runs afoul of the Supreme Court's teaching that '[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, *or the validity of particular litigants' interpretations of those creeds*.'" *Kane*, 19 F.4th at 169 (emphasis in original) (citing cases).

Here, Ms. Collins received a denial of her religious accommodation under the same unlawful policy struck down in *Kane* and was never provided a fresh review. She appealed under the

17

Stricken Standards and received a cursory denial from the arbitrator with no further explanation than an "x" next to the word denied. [SAC ¶¶ 483-486]. After *Kane*, Ms. Collins attempted to apply through SOLAS for a Citywide Panel review but was repeatedly sent an error message and blocked from applying. [SAC ¶¶ 518-519]. Her follow-up letter to DOE requesting a remedial review [SAC ¶¶ 520-521] resulted in an email confirmation that her application would be reviewed, but no action was ever taken, and she was terminated without ever receiving a decision. [SAC ¶¶ 522-526].

### B. The Stricken Standards Policy Was Not Generally Applicable

Strict scrutiny also applies because the religious accommodation policies were not generally applicable. The facts show general applicability was defeated in multiple ways, including the Mayor's unfettered discretion to make carve-outs to the City's mandates [SAC ¶¶ 408-425, regarding EEO 62 creating exceptions for athletes and performers], and Defendants' admission that it accommodated at least 163 employees, including teachers, under the original process [SAC ¶ 120], while applying "a more onerous undue hardship standard" to others [SAC ¶¶ 663-666].

Moreover, the Second Circuit has already held that the original accommodation process was not generally applicable, because the Stricken Standards allowed for "individualized government assessment of the reasons for the relevant conduct, the process was not generally applicable." *Id.* at 169, quoting *Employment Div., Dept. of Human Resources of Oregon v. Smith,* 494 U.S. 872, 877 (1990). Multiple circuits have followed *Kane* to strictly scrutinize government denials of religious exemptions, which are bound by statute to individually consider reasons for seeking accommodation. *See, e.g., Does 1-11 v. Bd. of Regents of University of Colorado*, 100 F.4th 1251 (10th Cir.); *Spivack v. City of Philadelphia*, 109 F.4th 158 (3d Cir.). Indeed, the Supreme Court holds that if there is *any* mechanism for individualized accommodation, even if never utilized, the law is not generally applicable. *Fulton v. City of Philadelphia, Pennsylvania*, 593 U.S. 522 (2021).

Here, state law clearly articulates a mechanism for individualized exemption, in fact, requiring individualized analysis under the SHRL and CHRL, and the Defendants' own policies also provided such a mechanism, resulting in the accommodation of 163 employees whose religious beliefs were deemed acceptable under the unconstitutional policies. This cannot be said to be a "generally applicable" policy which should not be subjected to scrutiny.

### C. Defendants' Policies Cannot Survive Strict Scrutiny

Applying strict scrutiny (triggered once either neutrality or general applicability is defeated), the Second Circuit held in *Kane* that the original religious accommodation policy, which is the only one Plaintiff was ever offered accommodation under, could not survive. After assessing whether the policies were "narrowly tailored" to serve a "compelling state interest" (*Kane*, 19 F.4th at 169), the Court held: "These procedures cannot survive strict scrutiny because denying religious accommodations based on the criteria outlined in the Accommodation Standards, such as whether an applicant can produce a letter from a religious official, is not narrowly tailored to serve the government's interest in preventing the spread of COVID-19. The City offers no meaningful argument otherwise." *Id.* This Court must follow that precedent, especially on a motion to dismiss, under which Defendants bear the burden.

### POINT IV
### PLAINTIFF ARTICULATED DISCRIMINATION CLAIMS

The SAC shows rampant religious discrimination. Whether analyzed under the Equal Protection Clause, Establishment Clause, or Statutory Standards, there can be no doubt that Plaintiff has asserted facts which give rise to liability under these claims. As a threshold matter, at the pleading stage, Plaintiff need only establish facts that give rise to a minimal inference of discriminatory motivation to survive a motion to dismiss. *Littlejohn*, 795 F.3d 311 (2d Cir. 2015) (holding that "the allegations in the complaint need be sufficient only to give plausible support to

a minimal inference of discriminatory motivation"). This "reduced prima facie burden" is appropriate because "the facts necessarily are within the defendant's knowledge" at this early stage. *Id*. at 310-13; see also *Vega*., 801 F.3d at 87 (confirming that "a plaintiff is not required to plead a prima facie case under McDonnell Douglas" to survive a motion to dismiss). Here, Plaintiff has far exceeded this minimal burden by alleging specific facts showing facially discriminatory policies, statements from decision-makers showing religious animus, and disparate treatment of different religious groups.

### A. Plaintiff Asserts Establishment Clause Claims

Plaintiff asserted straightforward claims under the Establishment Clause. Government officials violate the Establishment Clauses when adopting express classifications that create denominational preferences. "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). "This principle of denominational neutrality has been restated on many occasions... [S]tated unambiguously: The State may not adopt programs or practices which aid or oppose any religion. This prohibition is absolute." *Id.* (cleaned up).

In *Larson*, the Supreme Court struck down a regulation requiring registration for religious organizations that solicited more than 50% of their funds from nonmembers, holding that it effectively distinguished between well-established churches and churches which are new and lacking constituency which "clearly granted denominational preferences." *Larson,* 456 U.S. at 228. Having found a free exercise violation, the *Kane* decision did not have to assess whether the Stricken Standards policy violated Equal Protection or the Establishment Clause. But it is self-evident. This case is *Larson* on steroids. Here, the preference for "established" religious organizations is not just implicit, it was explicitly stated in the Stricken Standards as the criteria

20

upon which accommodation rested (among other denominational preferences).

Multiple other Establishment Clause violations have also been alleged that were not before the Second Circuit in *Kane*. One particularly fatal fact alleged here is that Commissioner Chokshi, who issued the Mandate, wrote a letter to the DOE, arbitrators and Citywide Panel, instructing them to deny religious beliefs involving abortion despite the well-documented use of aborted fetal cell lines in vaccine development [SAC ¶¶ 240-244]. This letter was repeatedly used by DOE in accommodation hearings to dismiss sincere religious objections [SAC ¶ 243]. This directly affected Ms. Collins, whose religious objection was based on her sincerely held religious beliefs against abortion [SAC ¶ 473]. It is black letter law that the "government may not compel affirmation of religious belief, punish expression of religious doctrine it believes to be false, impose special disabilities on basis of religious views or religious status, or lend its power to one or other side in controversies over religious authority or dogma." *Smith*, 494 U.S. 872 at 110. Commissioner Chokshi violated nearly all these prohibitions.

**B. Plaintiff Asserted Equal Protection Claims**

For similar reasons, Plaintiff pleaded Equal Protection Claims. The Equal Protection Clause prohibits the government from classifying people based on suspect classes unless the classification satisfies strict scrutiny. *Kadrmas v. Dickinson Pub. Schs.*, 487 U.S. 450, 457-58 (1988). Religion is a suspect class. *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (per curiam). When the government expressly classifies persons based on a suspect class, its action is automatically subject to strict scrutiny. As this Circuit recognizes, "[a] plaintiff in such a lawsuit need not make an extrinsic showing of discriminatory animus or a discriminatory effect to trigger strict scrutiny." *Jana-Rock Constr., Inc. v. N.Y. State Dep't of Econ. Dev.,* 438 F.3d 195, 204-05 (2d Cir. 2006) (citing cases).

Under Equal Protection analysis it matters not if the Government could have denied Plaintiff based on undue hardship or another reason as well. All that matters is that she was subjected to different barriers based on her disfavored religious beliefs. "When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier" to state a claim. *Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993).

**C. Plaintiff Pleaded Statutory Discrimination Claims**

For the same reasons set forth above, Plaintiff has alleged statutory discrimination claims. Pleading standards on any discrimination claim, even those without direct evidence of discrimination, are lenient, and it is well settled in this Circuit that at the motion-to-dismiss stage, the complaint benefits from a temporary presumption and must be viewed in light of the plaintiff's minimal burden to show discriminatory intent. *Littlejohn*, 795 F.3d 297.

There are several frameworks to assess discrimination. In this case, where there is a written policy that expressly favors certain religions over others, the case must be assessed under the "direct evidence" discrimination standard. Under this standard, the employer cannot "rebut" a claim by demonstrating the existence of a non-discriminatory reason for reaching the same result -- rather, they are subject to summary judgment unless they can present a valid affirmative defense against the use of the suspect category. *TWA v. Thurston*, 469 U.S. 111, 121 (1985). None are available here, as religious discrimination is *per se* unconstitutional. *See generally* Melissa L. Saunders, *Equal Protection, Class Legislation, and Colorblindness*, 96 Mich. L. Rev. 245, 262 (1997); *Trump v. Hawaii*, 138 S. Ct. 2392, 2423 (2018) (overruling *Korematsu v. United States*, 323 U.S. 214 (1944)).

22

Thus, even if Defendants could prove undue hardship, this would not allow for denial of claims. Moreover, Plaintiff pled that the autogenerated undue hardship denials violated statutory requirements by applying the wrong de minimis standard, failing to assess required factors or provide any evidentiary support, and failing to engage in cooperative dialogue and that the determinations were pretextual. For example, the City incanted "undue hardship" to deny accommodations even though Ms. Collins' non-classroom job could have easily been done 100% remotely. Moreover, Defendants have yet to provide a non-discriminatory reason why they could accommodate teachers and others accommodated under the Stricken Standards but not Ms. Collins and others whose religious beliefs did not merit protection under that unlawful policy.

### D. Plaintiff Pleaded Retaliation Claims

Defendants' contention that Plaintiff failed to adequately plead retaliation claims is without merit. The SAC details specific retaliatory actions that satisfy the required elements under Title VII and corresponding state laws. The most egregious form of retaliation involves Defendants' attachment of "problem codes" to Plaintiff's personnel and fingerprint records - codes typically reserved for employees who committed serious offenses like child abuse [SAC ¶¶ 537, 539-541]. These codes are shared with outside agencies including the FBI [SAC ¶ 564] and have effectively blacklisted Plaintiff from employment in education. After the mandate was lifted in February 2023, DOE refused to reinstate Plaintiff, despite the fact that the position remained open [SAC ¶¶ 542-543]. Plaintiff has been unable to find work anywhere in the City because of this Problem Code [SAC ¶ 556].

The SAC also details how Defendants imposed coercive conditions designed specifically to punish those who sought to preserve their right to challenge discriminatory determinations. Specifically, Defendants required employees to "sign a waiver of their right to challenge the

determination or face termination 'for cause' and lose their good standing, paid time off credits (which belonged to them by law and contract) and health insurance while they waited on leave without pay" [SAC ¶¶ 438-443]. This explicit conditioning of benefits on the waiver of legal rights represents quintessential retaliation against those who sought to challenge discriminatory treatment.

Additionally, Plaintiff's ability to do contract work through her not-for-profit was also impacted by the Problem Code. Plaintiff runs a not-for-profit business providing support to students with disabilities that was registered with the NYC Vendor Portals prior to the placement of the Problem Code in her files. Because Defendants placed the Problem Code in her files at both the City and DOE levels, Plaintiff's not-for-profit was removed from the vendor portals and she is no longer able to submit grant or RFP proposals. [SAC ¶¶ 557-559]. Plaintiff was also barred from applying for city contract work because she could no longer access the Mayor's Office of Contract Services (MOCS) portal after the Problem Code was placed on her file. [SAC ¶¶ 560-563].

These allegations more than satisfy the minimal pleading requirements for retaliation claims at this stage. *Littlejohn*, 795 F.3d at 311. The problem codes and waiver requirements in particular demonstrate Defendants' retaliatory intent against those who sought to exercise their religious rights and preserve their ability to challenge discrimination.

**POINT V**
**PLAINTIFF'S CLAIMS ARE NOT LIMITED TO ARTICLE 78 PROCEEDINGS AND ARE NOT TIME-BARRED**

There is no support for Defendants' argument that these claims had to be brought as an Article 78 proceeding rather than a plenary action. Despite their extensive citations, Defendants fail to provide a single case holding that SHRL, CHRL, Title VII claims or federal constitutional claims must be brought as Article 78 proceedings. Defendants' argument is frivolous because it directly contradicts well-established Supreme Court precedent establishing that plaintiffs are masters of

24

their complaints and may choose their forum. As noted in *Whitfield v. City of New York*, 96 F.4th 504, 528-29 (2d Cir. 2024), "it is the petitioner's choice whether to bring an Article 78 proceeding -- with the attendant summary procedures, deferential review of agency action, and limited menu of relief -- or a plenary action."

Furthermore, Defendants' position would effectively strip this Court of jurisdiction over federal claims, contrary to the explicit statutory grant of jurisdiction under 28 U.S.C. §§ 1331 and 1343. It would also undermine Congress's express intent to provide a federal forum for civil rights claims through 42 U.S.C. § 1983 and Title VII, and the Court's right and obligation to exercise supplemental jurisdiction over state law claims intertwined with facts at issue in federal claims.

The Supreme Court has repeatedly affirmed that federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Defendants' attempt to funnel federal and state civil rights claims into state administrative proceedings directly contradicts this principle.

Defendants' argument also ignores that many of Plaintiff's claims and requested relief could not even be properly adjudicated through an Article 78 proceeding. Plaintiff seeks compensatory damages, pain and suffering damages, and injunctive relief for violations of federal and state law— remedies that extend beyond the limited scope of Article 78 proceedings. In fact, in *Kern*, a case upon which Defendants rely, the Second Circuit recognized that "an Article 78 proceeding does not preclude a subsequent § 1983 proceeding because damages sought pursuant to § 1983 typically are not available in Article 78 proceedings." 857 F. App'x 691, 694 (2d Cir. 2021). In that case, it was only because the plaintiff failed to seek damages in the subsequent federal suit that the court barred her second claim on the basis of *res judicata*.

## POINT VI
## PLAINTIFF'S STATE LAW CLAIMS AGAINST DOE ARE NOT BARRED BY NOTICE

### OF CLAIM REQUIREMENTS

**A. Notice Requirements Do Not Apply to Claims Against the City**

All parties agree that the state law claims against the City do not require any pre-suit notice. The Education Law only applies to suits against schools, and it is undisputed that the City's General Municipal Law notice requirements do not attach to human rights claims. As set forth in Point I, the City is jointly liable for the discriminatory religious accommodation policies inflicted on Plaintiff and would be required to pay damages even if monetary claims against the DOE were barred. To the extent DOE is required to reinstate Plaintiff, that relief is equitable and thus not subject to the notice of claim requirement in any event. However, even if the City was not a joint party, Plaintiff's state law claims are not barred by any notice barriers.

**B. Notice Requirements Do Not Apply to Claims Against the DOE**

Defendants' argument that the state law claims against DOE should be barred is also in error. First, courts in this district have held that the notice of claim requirement does not attach to human rights claims. For example, as this Court recognized in *Caputo v. Copiague Union Free Sch. Dist.*, 218 F. Supp. 3d 186 (E.D.N.Y. 2016), "a notice of claim for a NYSHRL claim against a school district or its personnel is not required."

Second, Plaintiff's lawsuit qualifies for the "public interest exception" to the notice of claim requirement. The New York Court of Appeals holds that the notice of claim requirement does not apply to "actions and proceedings brought to vindicate a public interest." *Union Free Sch. Dist. No. 6*, 35 N.Y.2d. This lawsuit addresses systematic deficiencies in civil rights policies which impacted thousands of employees' religious rights, clearly placing it within the public interest exception. To the extent that Defendants argue that damages claims defeat the public interest exemption, that argument is refuted by *Union Free Sch. Dist. No. 6* itself, in which the Court of Appeals awarded the exception to a single teacher seeking damages, holding: "It is true, of course,

26

that this proceeding was triggered by the complaint of this one teacher and that the relief granted below will redound to the benefit of that teacher as well as to the benefit of other teachers similarly situated. Such circumstances cannot be allowed, however, to obscure the fact that advantages which accrue to these teachers stem not from their rights of contract or other individual entitlement but rather flow as an appropriate and intended consequence of the [] of the public's interest in the elimination of discrimination based on sex -- a public interest duly declared by legislative enactment." *Id.* at 380. This lawsuit too does not arise over individualized contract disputes but rather is a proposed class action seeking to address systematic deficiencies in civil rights policies which impacted thousands of employee's religious rights, clearly placing it within the public interest exception. As the Court of Appeals explained in *Mills v. County of Monroe*, 59 N.Y.2d 307, 311 (1987), the public interest exception is applied to actions like this one that are "brought to protect an important right, which seek relief for a similarly situated class of the public, and whose resolution would directly affect the rights of that class or group..."

Third, no notice of claim is required to order DOE to reinstate plaintiff, as these claims "which are equitable in nature, are not barred by their failure to file a notice of claim pursuant to Education Law § 3813(1), which is only required when money damages are sought" *Kahn v. New York City Dep't of Educ.*, 79 A.D.3d 521, 522 (1st Dep't 2010), [aff'd,] 18 N.Y.3d 457, 963 N.E.2d 1241 (2012). Assuming, arguendo, that Plaintiff failed to provide adequate notice, she could still receive a reversal of her denial of religious accommodation and reinstatement from the DOE (unquestionably equitable in nature) and secure any additional monetary damages from the City, which is not able to claim a notice defense (Point IV(A)). Fourth, it is undisputed that Education Law § 3813(1) only applies to state law claims and cannot impact Title VII or Federal Constitutional Claims against the DOE.

**C. Plaintiff Met the Notice of Claim Requirements in Any Event**

To the extent Education Law § 3813(1) imposes notice requirements for state law claims against the DOE, Plaintiff satisfied them either literally or functionally.

**1. Functional Notice Suffices**

New York courts consistently hold that functional notice satisfies Education Law § 3813(1). The Court of Appeals recognizes that Human Rights charges can serve as notice (*Union Free Sch. Dist. No*. 6, 35 N.Y.3d at 380), and Appellate Divisions have found that unverified letters (*Spoleta Const*. *v. Bd. of Educ.*, 221 A.D.2d at 928 (1995), PERB complaints (*Deposit Cent. Sch. Dist*. *v. PERB*, 214 A.D.2d at 292 (1995)), and Petitions to the Commissioner (*Mennella v. Uniondale Union Free S.D.*, 287 A.D.2d at 636-37 (2001)) all constitute sufficient notice. Similarly, courts in this district recognize EEOC complaints as sufficient notice. See *Kushner v. Valenti*, 285 F. Supp. 2d 314, 316 (E.D.N.Y. 2003); *Brtalik v. S. Huntington Union Free Sch. Dist.,* 2010 WL 3958430, at *5 (E.D.N.Y. Oct. 6, 2010); *Richard v. NYC Dep't of Educ*., 2022 WL 4280561, at *17 (E.D.N.Y. Sept. 15, 2022). Defendants citation to an older S.D.N.Y case does not undermine this argument. Newer SDNY precedent recognizes that courts in this circuit "have begun to coalesce around the rule that an EEOC complaint can satisfy notice of claim requirements" when it provides adequate notice and is properly served. *Riccardo v. N.Y.C. Dep't of Educ*., 2016 WL 7106048, at *8 (S.D.N.Y. Dec. 2, 2016).

**2. Plaintiff Provided Timely and Proper Functional Notice**

Ms. Collins functionally met her notice of claim requirements. First, her letter to the DOE sent in November 2021 alerted them to her claims post-*Kane* and demanded relief in the form of a remedial review and accommodation. SAC ¶ 730. In *Berkowitz v. E. Ramapo Cent. Sch. Dist*., 932 F. Supp. 2d 513, 527 (S.D.N.Y. 2013), the court held that a simple unverified letter sent to the

28

school board was sufficient to satisfy the notice requirements under Education Law § 3813(1). The court found that this group letter, which alerted the district to the nature of the claims and the class-wide implications, functionally met the notice requirements. Plaintiff's letter contained all the essential elements required for notice under § 3813(1) and was more substantial than the single group letter deemed sufficient in *Berkowitz*. The letter identified the nature of the claims (religious discrimination), the parties involved, and the relief sought (fresh consideration of accommodation requests). DOE failed to adjust them within thirty days, and Plaintiff should be able to proceed on this alone.

The SAC also asserts that Plaintiff filed an EEOC charge on October 15, 2021, asserting that the City and the DOE had violated Title VII through their discriminatory religious accommodation policy and unlawful denial of religious accommodation. [SAC ¶ 516]. Defendants assert that the EEOC complaint was first filed on May 16, 2022, raising a disputed fact. It is unclear whether the May 16, 2021 submission was the first notice provided under the EEOC's filing process, but even if it were, the record shows it was within 90 days of when Ms. Collins was notified that she was terminated. The SAC does not address when Ms. Collins was notified, but the EEOC filing that Defendants submitted with their papers clearly states that she was notified on April 29, 2022 (Smith Decl. Ex. C). May 16, 2022 is well within 90 days of that date.

To the extent that Defendants disagree with the dates, such factual dispute cannot be resolved on a motion to dismiss. Moreover, though Ms. Collins was terminated in February 2022, and notified in April 2022, she had yet to receive the promised Citywide Panel determination, which created ambiguity about the finality of that date. The August 2022 offer to return further complicates the finality of any decisions. Additionally, on February 21, 2023, Plaintiff timely mailed a new Notice of Claim by certified mail, return receipt to the City and the DOE, notifying

both parties once more that she has claims for discrimination, failure to accommodate, unlawful termination and retaliation from the Problem Code issue. [SAC ¶ 568].

The 90-day notice period begins when plaintiffs receive "clear and definite notice" of the final adverse action. *Langsford v. Yale Univ. Sch. of Med.*, 39 F. App'x 683, 685 (2d Cir. 2002). When agencies create "ambiguity or uncertainty" about whether a final decision has been issued, courts must "resolve any ambiguity created by the public body against it." *Carter v. State*, 95 N.Y.2d 267, 270 (2000). Here, there is too much ambiguity to resolve timeliness of the many notices Ms. Collins presented against her here.

## POINT VII
## PLAINTIFF TIMELY EXHAUSTED HER ADMINISTRATIVE REMEDIES

### A.  PLAINTIFF TIMELY FILED HER EEOC CHARGE AND THIS LAWSUIT

Defendants' arguments that Plaintiff failed to exhaust her administrative remedies mischaracterize both the facts and applicable law. Plaintiff timely filed two EEOC complaints. Even using Defendants facts, the first complaint was filed less than a month after she was notified of her termination on April 29, 2022, and while Plaintiff did not file this lawsuit within ninety days of the right to sue letter on that matter, this is immaterial to her claims.

This is because Ms. Collins filed a second EEOC complaint on February 21, 2023, within 298 days of her April 29, 2022 notification of termination. [Smith Decl, Exhibit C and D]. This second charge addresses a critical fact that Defendants overlook: Ms. Collins never received a final determination from the Citywide Panel on her religious accommodation request. After the Second Circuit's ruling in *Kane*, Ms. Collins attempted to submit an appeal through SOLAS but encountered technical barriers. (SAC ¶ 519). She then sent a letter to DOE requesting Citywide Panel review, and received confirmation that "the Citywide Panel would review her application and reinstate her with back pay if she was deemed qualified under lawful standards." (SAC ¶¶ 520-

30

522). Despite this promise, "the Citywide Panel never engaged in any cooperative dialogue or took any further action on Plaintiff's appeal." (SAC ¶ 523). The Citywide Panel "failed to issue any decision at all, leaving Plaintiff's application to pend for months." (SAC ¶ 524). To this day, Ms. Collins has never received the promised determination. This absence of a final decision means her Title VII claims continued to accrue, as the Panel's promise was to "reinstate" her with back pay, meaning that even a termination was not necessarily a final action.

Courts have consistently recognized that the statutory period for filing an EEOC charge does not begin until the claimant receives "definite notice" of final action that cannot be remediated. *See Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980). Where an employee is left in administrative limbo without a final determination, the claim cannot be considered time-barred. *See Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105-06 (2013) (recognizing that causes of action accrue when a final decision is made).

Ms. Collins' second EEOC charge thus serves as a proper basis for her Title VII lawsuit challenging both her termination without the promised review and Defendants' subsequent refusal to reinstate her with back pay, or rehire her as well as the retaliation stemming from the Problem Codes. No party disputes that Ms. Collins filed this lawsuit within ninety days of receiving her right to sue letter on the second EEOC complaint, making her Title VII claims timely filed. See *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015).

## B. Exhaustion of Internal Appeals Processes Argument is Meritless

Defendants' argument that Plaintiff failed to exhaust internal appeals is particularly meritless in Collins' case, as she did in fact exhaust all available appeals processes. As detailed in the SAC, Collins timely applied for religious accommodation through the SOLAS portal (SAC ¶ 478), received an autogenerated denial (SAC ¶ 480), and promptly appealed that denial to the

31

arbitrator (SAC ¶ 483). She received confirmation that her appeal would be considered, but after submitting her appeal, she was not offered a zoom hearing and instead "received a denial, with no further explanation than an 'x' next to the word denied." (SAC ¶¶ 484-486). Following the Second Circuit's ruling in *Kane*, Collins made diligent efforts to obtain Citywide Panel review, both by attempting to apply through SOLAS and then by formally requesting review in writing (SAC ¶¶ 518-520). Moreover, Defendants acknowledged that she was eligible for a Citywide Panel review and would be given one. (SAC 522).

Defendants' argument that Collins failed to exhaust is not only factually incorrect but legally baseless. The Supreme Court has established that plaintiffs need not exhaust internal administrative remedies before filing Title VII claims where such procedures would be futile. *See Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 516 (1982). Moreover, Defendants rely on a case that explicitly holds exhaustion is excused "when an agency's action is challenged as either unconstitutional or wholly beyond its grant of power, or when resort to an administrative remedy would be futile or when its pursuit would cause irreparable injury." *Town of Oyster Bay v. Kirkland*, 19 N.Y.3d 1035, 1038 (2012). The Second Circuit in *Kane* already determined that the Stricken Standards were unconstitutional, creating precisely the type of circumstance where exhaustion would be excused.

Even if complete exhaustion were required (which it is not), Collins would meet this requirement. She pursued every available avenue for review, including the original arbitration appeal and subsequent attempts to secure Citywide Panel review. Collins cannot be barred from pursuing her claims because Defendants failed to complete a review process they themselves promised. As the Second Circuit recognized in *New Yorkers for Religious Liberty, Inc. v. City of New York*, 121 F.4th 448, 464 (2d Cir. 2024), an employee who "never even had an opportunity to

32

appeal the denial of her religious exemption or to have her exemption considered by the Citywide Panel" has a valid claim because "without the opportunity to submit to the Citywide Panel for fresh review, [her] religious exemption request can only have been considered under the same framework that we held was likely unconstitutional in *Kane*."

The law does not permit Defendants to create procedural barriers, fail to provide promised reviews, and then claim that Collins failed to exhaust administrative remedies. To hold otherwise would reward Defendants for their own obstructive conduct and contravene the remedial purposes of Title VII and related anti-discrimination laws.

**POINT VIII**
**THE SECOND AMENDED COMPLAINT COMPLIES WITH RULE 8, AND DEFENDANTS' ARGUMENTS ARE PROCEDURALLY IMPROPER, SUBSTANTIVELY MERITLESS, AND IRRELEVANT**

Defendants' contention that the Second Amended Complaint violates Rule 8 is procedurally improper and substantively meritless.

Substantively, Defendants' claim that Collins' discussion of the "Stricken Standards" is "irrelevant" misrepresents the heart of her case. [Def. Br. at 50–51]. Defendants argue that these standards, struck down as unconstitutional by the Second Circuit in November 2021, are immaterial because they "have not been in use for nearly three years." *Id*. at 50 (citing *Kane*, 19 F.4th). Far from supporting dismissal, this argument underscores Collins' central claim: Defendants applied unconstitutional standards to deny her religious exemption request and failed to remedy the resulting harm. Unlike the *Kane* plaintiffs, who received "fresh consideration" post-ruling, Collins was denied any review under lawful standards, leaving her subject to decisions tainted by admittedly discriminatory criteria. The "Stricken Standards" are not mere historical context—they are the foundation of Collins' claims of religious discrimination, failure to accommodate, and retaliation. These allegations are essential to establishing Defendants' pattern

of unconstitutional conduct and their refusal to provide a remedy, directly supporting Collins' causes of action under Title VII, the First Amendment, the Fourteenth Amendment, and state law.

The Second Amended Complaint complies with Rule 8's requirement for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Given the complexity of this case—involving a years-long pattern of alleged discriminatory conduct affecting Collins and thousands of others, including *Monell* claims—the level of detail is proportionate and necessary to articulate her experience and the systemic violations alleged.

Finally, Defendants' lengthy argument in the brief - that the vaccine mandate is lawful - is irrelevant and not properly before the Court. [Def. Br. at 47–49]. Collins does not challenge the mandate's legality but instead asserts that Defendants engaged in religious discrimination, failed to accommodate, and retaliated against her in processing her exemption request and imposing adverse employment actions. Defendants' reliance on cases like B*roecker v. N.Y.C. Dep't of Educ*., 585 F. Supp. 3d 299 (E.D.N.Y. 2022), is a red herring, addressing a claim not raised here. The Court should disregard this argument as outside the scope of Collins' claims and irrelevant to this motion.

## CONCLUSION

Defendants' motion to dismiss fails to overcome the Second Amended Complaint's well-pleaded allegations of religious discrimination, failure to accommodate, harassment and retaliation, which are squarely supported by *Kane*, 19 F.4th 152, and *New Yorkers for Religious Liberty*, 121 F.4th 448. The SAC plausibly alleges that Defendants' unconstitutional "Stricken Standards" and refusal to provide remedial Citywide Panel review violated Collins' rights under the First Amendment, Title VII, SHRL, and CHRL. Defendants' procedural objections, including Rule 8 and Article 78 arguments, are meritless. And Collins met the notice and exhaustion

requirements to bring her federal, state and local claims.

Accordingly, the Court should deny the motion to dismiss in its entirety, direct Defendants to answer within 60 days (to which Plaintiff does not object), and grant such further relief as is just, including leave to formalize the stipulated withdrawal of the substantive due process claim.

Dated: Ithaca, New York
       May 14, 2025

Respectfully Submitted,

Gibson Law Firm, PLLC

By:  /s/ Sujata S. Gibson
     Sujata S. Gibson
     120 E Buffalo Street, Suite 201
     Ithaca, NY 14850
     (607) 327-4125
     sujata@gibsonfirm.law

     *Attorneys for the Plaintiff*

35